Borgine Borden v. Commissioner. Victor Borden v. Commissioner.
Borden v. Commissioner
Docket Nos. 16721, 16722.
United States Tax Court
1948 Tax Ct. Memo LEXIS 73; 7 T.C.M. (CCH) 743; T.C.M. (RIA) 48205; October 7, 1948
*73 Petitioners are domiciled in the State of Washington, a community property state and were married in 1929. During the taxable years they were operating in the State of Washington a small packing plant, canning salmon. Both were active in service in the business and devoted most of their time to it during the seasons of its active operation. Most of the capital invested in the business was community capital which the spouses had accumulated during the years since their marriage. The separate capital of each invested in the business was not substantial. Held, the income of the business during the taxable years 1942, 1943 and 1944 was due primarily to the personal services of the spouses and the use of their community capital in the business and was the community income of petitioners under the laws of the State of Washington and the Commissioner erred in allocating a considerable part of it to the husband as his separate income. Harry Ellsworth Foster, Esq., and C. L. Security Bldg., Olympia, Wash., petitioners. Douglas L. Barnes, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion These proceedings have been consolidated. The deficiencies *74 in the case of Victor Borden, Docket No. 16722, were determined in the deficiency notice to be as follows: Year
Deficiency
Penalty
1943
$764.49
1944
169.00
$31.03
In Docket No. 16721 deficiencies in tax and penalty were determined against Borgine Borden for the year 1944 in the respective amounts of $23 and $31.03. The penalties indicated above in each docket were determined under section 294(d)(2) and are occasioned by respondent's determination of "substantial underestimates" of tax liability for that year. The net income of the community for the year 1944 has been increased by various "community" adjustments aggregating $799.99 which are not contested by the petitioners. For this reason respondent alleges in his brief as follows: "* * * Accordingly, if petitioners are sustained in contending that all of the income derived from the Mohawk Packing Company is equally divisible between the husband and wife, some reduction will result in the deficiency asserted with respect to Victor Borden, Docket 16722. However, there will be an increase in the deficiency, which will be due from Borgine Borden on Docket 16721. Pending the ultimate decision of this court, *75 there is no way of determining whether such an increased deficiency should be asserted, or the amount thereof. Respondent respectfully claims such additional deficiency in Docket 16721, should the petitioners' contentions in this proceeding be sustained, and the amount thereof should be reflected in a Rule 50 recomputation." In his deficiency notice to Victor Borden the Commissioner stated: "(a) It is held that of the total income reported by you and your wife for the years 1942, 1943 and 1944, only that portion attributable to earnings from community investments and services represents community income. The remainder constitutes income from your separate investment in the Mohawk Packing Company which is taxable only to you. The income of the Mohawk Packing Company has been apportioned in the ratio of the reasonable value of services and fair return on separate and community capital therein as it appears from available evidence and records subsequent to the date of your marriage on September 7, 1929. * * * Accordingly, it has been determined that of the total income of $15,130.24 for the calendar year 1942, $9,935.39 is taxable to you and $5,194.84 is taxable to your wife; for *76 the calendar year 1943, your net loss has been determined to be $340.56 and your wife's net income has been determined to be $1,130.95; and for the taxable year 1944, your net income is $4,305.55 and your wife's net income is $3,689.31." A similar statement was made in the deficiency notice to Borgine Borden. To the determinations made by the Commissioner in his deficiency notices, the petitioner Victor Borden assigned error as follows: "The determination of tax set forth in the said notice of deficiency is based upon the following errors: "(a) The Commissioner erroneously designated a portion of the community income of Victor Borden and his wife, Borgine Borden, as the separate income of Victor Borden. "(b) The Commissioner erroneously added a penalty to the deficiency in the amount of $31.03. The Commissioner contends that there was a substantial understimate of the estimated tax." Similar assignments of error are made in the petitioner of Borgine Borden. Findings of Fact Petitioners Victor Borden and Borgine Borden are husband and wife residing and domiciled at Moclips, Washington. They filed their individual income tax returns for the periods January 1, 1942 to December 31, 1944 with *77 the Collector of Internal Revenue for the District of Washington at Tacoma, Washington. They were married on September 7, 1929. In the year 1928 Victor Borden commenced the operation of a fish canning business at Moclips, Washington known as the Mohawk Packing Company. It was first operated as a sole proprietorship and was a small concern with only a small volume of business. Borden secured a trading license in order to deal with the Quinault Indians who customarily derive their livelihood from the sale of salmon caught at the tribal fishing grounds on the Quinault River adjacent to the town of Moclips, Washington. When petitioner Victor Borden began the business in 1928 he leased a building at Moclips from a Mr. Peebles with subsequent right to purchase the property, and installed his packing equipment therein which was at that time meager and only of small value. He agreed to apply the rental of said premises on the purchase price and gave a note to Peebles in the amount of $4,000 covering the agreed price of the cannery and warehouse prior to February 28, 1929. Petitioner at that time was unmarried. He married Borgine Borden September 7, 1929. At the time petitioners were married *78 very little had been paid by Borden to Peebles as rentals which, under the contract, was to be applied as purchase price on the house. The house was described in the testimony as "an old house made out of an old dry kiln. It is about 24 feet long and 24 feet wide." After petitioners married they completed out of community funds payments on the property. These payments were completed by 1934 and a deed to the property was obtained in that year from Peebles. On or about February 16, 1929, which was prior to his marriage, Victor needed to borrow some money and in his effort to do so he gave a financial statement to the First National Bank of Hoquiam, Washington. The assets and liabilities shown on this financial statement are as follows: Victor Borden
Moclips, Washington
Balance Sheet given to the
First National Bank of Hoquiam
as of February 16, 1929
Cash
$ 455.85
Accounts Receivable
2,306.06
Merchandise - Finished
9,362.40
Cans and Cases
1,090.32
Machinery and Equip. (bldg.)
4,313.23
Insurance Prepaid
42.78
Automobile
960.00
$18,530.64
Notes Payable - Bldg.
$4,000.00
Notes Payable - Mdse.
3,600.00
7,600.00
$10,930.64
*79 Signed - Victor Borden 3/5/29 The Commissioner used the figures embodied in the foregoing statement as the chief basis for his determination that petitioner Victor Borden had a net capital investment in the Mohawk Packing Company on September 7, 1929, the date of his marriage to Borgine, of $12,782.10. As a matter of fact the evidence affirmatively shows that Victor's net worth at the time of his marriage was very little. Between the time of his statement of February 16, 1929 to the bank and his marriage to Borgine on September 7, 1929, the following changes had occurred in Victor's assets as shown in that statement: Accounts receivable of $2,306.06 which consisted of advancements made to Indians on the Quinault Reservation proved to be worthless in large part. Of the finished merchandise listed in the statement at $9,362.40, $7,200 was lost in a car lot shipment of chum salmon to Knoxville, Tennessee. The consignee of this shipment claimed that the canned salmon was in bad condition, refused to pay for it and nothing was ever collected on this shipment. So that under the evidence in this proceeding the following is a list of petitioner's assets and liabilities previously included *80 in the financial statement at the time of his marriage to Borgine, September 7, 1929: Cash
$ 455.85
Merchandise, Finished
2,162.40
Cans and Cases
1,090.32
Machinery and Equipment (bldg.)
4,313.23
Insurance Prepaid
42.78
Total Assets
$8,064.58
Liabilities
Notes Payable - Building
$4,000.00
Indebtedness for Merchandise
3,600.00
Total Indebtedness
$7,600.00
Victor's net worth in the Mohawk Packing Company at the time of his marriage to Borgine, exclusive of any earnings of the year 1929 up to that date, was $464.58. The net earnings of the Mohawk Packing Company for the years 1929 to 1944, inclusive, as determined by the Commissioner and agreed to by petitioners, were as follows: 1929
$ 4,577.19
1930
13,217.36
1931 and 1932
7,820.27
1933 and 1934
2,032.28
1935
(loss)
(405.20)
1936
2,220.91
1937
82.06
1938
2,247.35
1939
2,466.67
1940
14,006.95
1941
38,119.87
1942
10,922.93
1943
(loss)
(3,390.61)
1944
1,458.52
Petitioner Borgine Borden was employed by Victor Borden in his cannery prior to their marriage on September 7, 1929. She has also been regularly employed in the business *81 since that time. Her duties consist primarily in maintaining the few business records and assisting in the operation of the cannery. The only business records consisted of a bank book in which the banking transactions were recorded, a book in which the fishermen's accounts receivable were listed, and some type of "single entry" set of books. At the time of her marriage to Victor, Borgine had between $600 and $700 which she had saved up from her earnings. All of this she put into the business soon after the marriage and has never taken it out. The fish cannery is operated actively for approximately two months in the fall and two months in the spring during the time the fish are running in the Quinault River. Mr. and Mrs. Borden devote their full time to the business during the period in which the fish are running and the salmon are being packed. In other seasons of the year there is not a great deal to do and Victor arranges for the repairs on the cannery and for the shipment of the season's pack. Petitioners' canning plant employs between 10 and 30 persons during the canning season. In determining the portion of the income from the Mohawk Packing Company which was attributable to *82 the separate investment of Victor, respondent held in the deficiency notices that the services of the husband and wife were reasonably worth the respective amounts of $3,000 and $1,200 per year and that the fair rate of return upon capital invested in this hazardous business was 10 per cent. He determined Victor's separate capital invested in the business to be $12,782.10. The respective amounts of separate and community capital as determined by the Commissioner in the Mohawk Packing Company as of December 31, 1941 computed by the use of these factors are set out in detail in the deficiency notices and need not be copied here. The investments by Victor Borden and Borgine Borden from their separate funds in the Mohawk Packing Company were comparatively small and were not a substantial income producing factor in the taxable years 1942, 1943 and 1944. The income from the operation of the Mohawk Packing Company in each of the taxable years was due primarily to the personal services of Victor and Borgine and to the use of community capital which they had accumulated in the business since their marriage in 1929. Opinion BLACK, Judge: Respondent states the issue in his brief as follows: *83 "Did respondent properly determine that the income derived by petitioners from the Mohawk Packing Company between January 1, 1942 and December 31, 1944 was partly attributable to the personal services and community capital of the husband and wife and partly attributable to the separate capital of the husband, and, accordingly, that the portion of the income and losses of the business in said years, which is includible only in the husband's separate return for Federal tax purposes, is as follows: "1942
$3,531.20
"1943
(loss)
(1,237.10)
"1944
573.47"
Petitioners contend that all of the income from the Mohawk Packing Company was community income under the laws of the State of Washington and that hence all of it was equally divisible between the two spouses and that none of it should be allocated as the separate income of Victor. They base this contention on two grounds, namely: (1) The evidence shows that at the time of marriage between Victor and Borgine in 1929 the business of Mohawk Packing Company was a small affair; that Victor's net worth in the business at that time did not exceed a few hundred dollars and that Borgine at that time put her entire *84 savings in the business and her investment was as much as her husband's; that both rendered services to the business using in the business their accumulated community capital and that under these circumstances, under the laws of the State of Washington, the entire earnings of the Mohawk Packing Company were the community earnings of husband wife and equally divisible between them. (2) That even conceding that Victor's net investment in Mohawk Packing Company was as much as the Commissioner has determined, nevertheless, under the laws of the State of Washington, as interpreted by recent decisions of its supreme court, the entire income of Mohawk Packing Company was the community income of Victor and Borgine and equally divisible between them. We think we must sustain petitioners under (1) above and it is unnecessary to discuss (2). Respondent's whole case for allocation is based on the correctness of his determination of Victor's separate estate at the time of his marriage with Borgine. When that fails his case falls with it. His determination in the deficiency notice that Victor had a separate investment of $12,782.10 in the Mohawk Packing Company at the time of his marriage with *85 Borgine was based largely upon a financial statement which Victor had made to the First National Bank of Hoquiam February 16, 1929. The amount of Victor's net worth in the business as shown by this statement was $10,930.64. To this the Commissioner added $1,851.46 which he determined to be the net earnings of Mohawk Packing Company from January 1, 1929 to September 7, 1929, the date of the marriage, thus reaching his figure of $12,782.10 as Victor's net investment in Mohawk Packing Company at the time of his marriage with Borgine. The oral testimony which was received at the hearing was directed toward proving that the financial statement upon which respondent based his determination did not correctly represent Victor's net worth in the business at the time of his marriage. The evidence shows that the $2,306.06 accounts receivable listed on the statement proved to be largely worthless. They represented advancements which had been made to Indians on the reservations for fishing nets, supplies, etc. Both petitioners testified that very few, if any, of these accounts were ever collected and that the amounts of these advances were lost. The only way that we could find that these accounts *86 had any value at the time of the marriage would be to completely disbelieve the testimony of petitioners. This we are unwilling to do. They went into details as to why these accounts proved to be uncollectible and we do not feel justified in disregarding this testimony. We have, therefore, removed this $2,306.06 from Victor's list of assets. Also the testimony shows that of the $9,362.40 canned salmon which was listed as merchandise on hand at the time of the statement, $7,200 worth was lost in a car load shipment of chum salmon to Knoxville, Tennessee which was shipped sometime after February 26, 1929 but prior to September 7, 1929. The testimony of both petitioners was to the effect that the car of salmon was shipped to Knoxville, Tennessee but was rejected by the consignee on the ground that the salmon were bad and that nothing was ever received in payment for this car of canned salmon. Their testimony on this item was corroborated by L. C. Curtis who testified for petitioners. He was in the bank at the time the shipment was made. He testified that he handled the bill of lading for the shipment with draft attached and that nothing was ever collected on the shipment. We have, therefore, *87 eliminated $7,200 of the $9,362.40 "Merchandise - Finished" carried in the bank statement. In our findings we have also eliminated another item carried in the financial statement and that is an automobile listed at $960. This was a passenger automobile which belonged personally to Victor and was not used in the business of Mohawk Packing Company, except incidentally, and was not a part of the business assets of that plant. Thus it seems reasonably clear from the evidence that when petitioners married in September 1929 and Borgine put her $600 or $700 in the business, the separate investment of Victor did not greatly exceed the separate investment of Borgine, including his profits of the business in 1929, up to that time. In the light of these facts we see no reason to hold that any of the income should be allocated as the separate income of Victor. In Julius Shafer, 2 B.T.A. 640, after discussing certain supreme court decisions in the State of Washington, we said: "As we understand these decisions of the Supreme Court of Washington, they lay down the rule that where business income was produced in part by the separate property and in part by the efforts of the *88 community, and each of these two factors was substantial, the court will attempt to allocate such earnings; but if it apears that the income is to be attributed primarily to one element, the other element may be disregarded." In the instant case we are convinced from the evidence that the earnings of the Mohawk Packing Company during the taxable years which we have before us were due primarily to the personal services of petitioners in the business and to the use of capital which they had accumulated in the business over a period of years as community property and that the separate capital investment of each petitioner in the business played a very small part in the earnings of the business and may, under the laws of the State of Washington, be disregarded. It is our holding, therefore, that all of the net earnings of the Mohawk Packing Company during the taxable years which we have before us should be treated as the community income of the spouses in a computation under Rule 50. For the year 1944 respondent has determined penalties for the underestimation of estimated tax by both petitioners under section 294(d)(2) of the Internal Revenue Code. The returns *89 of petitioners are in evidence and the amounts of income which they rendered for taxation are in evidence. As has already been stated, respondent has determined certain additions to community income which are not contested. These will be taken into account in a computation under Rule 50. If a recomputation under Rule 50 shows that petitioners underestimated their tax liability to the extent provided in the I.R.C. applicable section, then the penalties provided by law will be in order - if not, there will be no penalties. A recomputation under Rule 50 will show what the situation is in that respect. At the hearing the Commissioner also alleged that if we should hold that all of the income from Mohawk Packing Company in the taxable years was community income and therefore one-half taxable to Victor and one-half taxable to Borgine, then that would result in a decreased deficiency for Victor and an increased deficiency for Borgine and he asked for an increase in the deficiency against Borgine. We have held that these earnings of Mohawk Packing Company were community income of the spouses and are equally divisible between them. If this holding results in an increased deficiency against *90 Borgine, respondent will be entitled to have it, he having asked for it at the hearing. Decisions will be entered under Rule 50.